## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

JOHN RA DOE and JANET RA DOE, AS NEXT
FRIENDS OF JANE R6 DOE, A MINOR;                    Case No.: 1:18-cv-922

          Plaintiff,                              Hon.

    v

MICHIGAN STATE  UNIVERSITY; THE BOARD OF
TRUSTEES OF MICHIGAN STATE  UNIVERSITY;
LAWRENCE GERARD NASSAR (individual  and
official capacity); USA GYMNASTICS, INC ; KATHIE
KLAGES; (individually and official capacity) WILLIAM
D. STRAMPEL, D.O. (individually and official capacity)
JEFFREY R. KOVAN; (individually and official capacity)
GARY STOLLAK; (individually and official capacity)
DESTINY TEACHNOR-HAUK; (individually and official
capacity)

          Defendants.

---

Richard A. Cascarilla (P32364)
Gary L. Bender (P31557)
Attorneys for Plaintiff
Murphy & Spagnuolo, P.C.
2123 University Park Dr., Ste. 130
Okemos, MI 48864
(517) 351-2020
rcascarilla@mbspclaw.com
gbender@mbspclaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

*A civil action between these parties or other parties arising out of the transaction or occurrence
alleged in this complaint have been previously filed in this court, where it was given docket
numbers 1:17-cv-00676; 1:17-cv-00349; 1:18-cv-00172; and
1:17-cv-00029 and were assigned to Judge Gordon J. Quist these
actions are still pending*

**NOW COME** John RA Doe and Janet RA Doe, as Next Friends of plaintiff Jane R6 Doe, a minor, by and through her attorneys Richard A. Cascarilla and Gary L. Bender of Murphy & Spagnuolo, P.C., and for their complaint state and allege as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by the minor plaintiff, Jane R6 Doe; as a result of the acts and omissions of Lawrence Nassar, D.O., (hereinafter "Nassar") Michigan State University (hereinafter "MSU"), the Board of Trustees of Michigan State University (hereinafter "MSU Trustees"), USA Gymnastics, Inc. ("USAG") and their respective employees, representatives, and agents, relating to sexual assaults, abuse, molestation, and nonconsensual sexual touching and harassment by defendant Nassar against plaintiff, a female, who is currently a minor.

2.      Plaintiff is a young athlete participating in youth sports including gymnastics.

3.      At all times pertinent hereto, defendant Nassar was retained by defendant MSU and defendant USAG to provide medical care, treatment, and advice to Michigan State University athletes and members of the general public. Defendant Nassar regularly provided such medical care, treatment, and advice at Defendant MSU's Clinical Center.

4.      Defendant Nassar came highly recommended to plaintiff as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for United States Gymnastics teams and USAG.

5.      Defendant Nassar used his position of trust and confidence to regularly and systematically sexually assault, batter, molest, and harass female patients over the entire course of his career in his capacity as an employee, agent, and/or representative of Defendants MSU,

USAG for his own personal self-gratification.

6.     Despite being informed of defendant Nassar's sexual assault, battery, molestation, and harassment, defendants MSU and USAG, failed to take appropriate action to prevent defendant Nassar from sexually molesting, abusing, and harassing his patients over the course of his career in his capacity as an employee, agent, and/or representative of defendants MSU and USAG.

7.     Plaintiff and her parents had no reason to suspect defendant Nassar was anything other than a competent and ethical physician.

8.     From approximately 1996 to 2016 defendant Nassar worked for Michigan State University in various positions and capacities.

9.     For over 20 years, defendant Nassar had unlimited access to young female athletes through the Sports Medicine Clinic at MSU and through his MSU responsibilities of serving other athletic organizations around the country.

10.     Defendant MSU was at all relevant times and continues to be a public university organized and existing under the laws of the State of Michigan.

11.     MSU received federal financial assistance is therefore subject to Title IX of the Educational Amendment of 1972, 20 USC § 1681(a).

12.     Defendant MSU Trustees is the governing body for Michigan State University.

13.     Defendant MSU and defendant MSU Trustees are hereinafter collectively referred to as the MSU defendants.

14.     The Deputy Title IX coordinators for investigations for defendant MSU for the relevant years were responsible for all investigations reported to the office of institutional equity, including all allegations associated with Title IX.

15.     William D. Strampel, D.O. was the Dean of the College of Osteopathic Medicine at MSU, serving as Dean from approximately 2002 until his retirement in 2018.

16.     MSU Sports Medicine Clinic is a wholly owned affiliate of Michigan State University, operating in the County of Ingham, State of Michigan, that offers medical care and treatment to individuals, including plaintiff: because MSU Sports Medicine is a program run and operated by MSU, and MSU solicits and targets individuals like plaintiff who would fall within the university community as defined by its Title IX policies.

17.     From 2013 to 2016, under the guise of medical treatment, defendant Nassar sexually assaulted, abused, and molested plaintiff Jane R6 Doe as more fully set forth below while she was a minor, by nonconsensual vaginal digital penetration without the use of gloves, lubricant or having a chaperone present.

18.     Plaintiffs Jane R6 Doe was seeking treatment for athletic injuries to her back, hip, head (concussion) and foot problems.

19.     All of the many assaults were carried out at MSU.

20.     Plaintiff Jane R6 Doe was first assaulted in 2013 when she was 11 years old at the MSU Clinical Center. Defendant Nassar inserted his ungloved finger into her vagina without lubrication or consent. Defendant Nassar failed to have a female employee in the room during the assault. Multiple additional assaults occurred over the next four years and finally ended in 2016 when Nassar was fired.

21.     At all relevant times, Nassar maintained an office at MSU in East Lansing, Michigan.

22.     At all relevant times, MSU, MSU Trustees, and Nassar were acting under color of law, specifically under color of statutes, ordinances, regulations, policies, customs, and usage of the State of Michigan or MSU.

23.     At all relevant times, Nassar was in the scope of his employment or agency with MSU.

24.     Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

25.     Nassar was a Doctor of Osteopathic Medicine and has never been a Doctor of Obstetrics or Gynecology.

26.     While employed by MSU, Nassar practiced medicine at MSU Sports Medicine Clinic which is located on MSU's East Lansing, Michigan campus.

27.     As part of defendant Nassar's employment and contractual duties with MSU, defendant Nassar was responsible for spending between 50% and 70% of his time engaged in "Outreach" and/or Public Services.

28.     A part of defendant Nassar's outreach included providing medical treatment to athletes some of whom were affiliated with defendant USAG, Red Cedar and Twistars USA, Inc. ("Twistars"), as well as other organizations such as East Lansing Public Schools, Holt High School and other secondary athletic events.

29.     USAG regularly recommended defendant Nassar to its members as a reputable physician available to them to provide treatment for athletic injuries.

30.     Beginning in 2013 through 2016 plaintiff suffered from back pain, hip, head (concussion) and a broken coxys as a result of participating in gymnastics and was treated by defendant Nassar at or through the MSU Sports Medicine Clinic.

31.    During alleged treatment, Nassar penetrated plaintiffs' vagina and unbeknownst to plaintiff, Nassar was apparently doing this for his sexual gratification.

32.    Nassar misrepresented to plaintiff and her parents' that this was the appropriate way to treat her injuries.

33.    Because of Nassar's reputation, plaintiff and her parents had no reason to doubt Nassar, as MSU and USAG represented him to be reputable, ethical and a trustworthy doctor.

34.    Nassar did not give prior notice or obtain consent from plaintiff's or plaintiffs' parents for this "treatment" even though all of the treatments occurred while plaintiff was a minor.

35.    Neither plaintiff nor her parents consented to any touching, rubbing or penetrating of plaintiffs' vagina.

36.    Plaintiff believed the conduct of defendant Nassar constituted medical treatment and did not discover or become aware that said conduct breached the standard of care or practice or was otherwise unlawful or tortious until recent media publications, defendant Nassar's guilty plea and subsequent public victim impact statements given in open court.

37.    Plaintiff now believes the conduct of Nassar was sexual assault, abuse, molestation and harassment performed for defendant Nassar's sexual pleasure and gratification.

38.    Defendant Nassar admitted under oath at his criminal pleas that the sexual assaults did not constitute medical treatment but were acts of criminal sexual assaults.

39.    Nassar's conduct and actions taken against plaintiff constituted sexual assault, abuse, and molestation and was undertaken for Nassar's pleasure and self-gratification.

40.    At times, defendant Nassar would position himself in a manner in which plaintiff's mother, when she was in the room, could not see his criminal and tortuous sexual assaults.

41.    Nassar used his position of trust and confidence in an abusive manner, causing plaintiff to suffer a variety of injuries including shock, humiliation, emotional distress and trauma, depression, and related physical manifestations, embarrassment, loss of self-esteem, disgrace and loss of enjoyment of life.

42.    MSU learned that Nassar was being charged with a crime in late August of 2016; however, MSU failed and refused to notify plaintiff or her parents or anyone similarly situated to plaintiff of the same, even though it was reasonably foreseeable that the allegations against Nassar would become public and plaintiff and others like her would learn that the treatment she received was not treatment, but instead, a sexual assault, and such information could cause, and did cause emotional harm and damage.

43.    Plaintiff Jane R6 Doe, first discovered that the treatment rendered by defendant Nassar was in fact sexual abuse in or around November of 2017 when Nassar pled guilty and admitted for the first time that her treatment was not justifiable medical treatment but rather a sexual assault in violation of plaintiffs' rights, privacy, and trust.

44.    For over 20 years, Nassar had unrestricted and unmonitored access to young female athletes through the Sports Medicine Clinic at MSU, USAG, Red Cedar Gymnastics, the Texas Ranch, and secondary public school athletic events who regularly and routinely referred young female athletes to his care.

45.    Upon information and belief, defendant MSU investigated the 2014 complaints through their office of institutional equity, and also the victim who reported to defendant MSU

certain facts, some of which were omitted from the investigative report including but not limited to the fact that defendant Nassar was sexually aroused while touching her.

46.    Three months after MSU initiated the investigation, in July of 2014, numerous victims complaints were dismissed and defendant MSU determined that she did not understand the "nuanced difference" between sexual assault and appropriate medical procedure and deemed defendant Nassar's conduct "medically appropriate" and "not of a sexual nature".

47.    Following the investigation, upon information and belief, defendant Nassar became subject to new institutional guidelines, one of which is believed that defendant Nassar was not to examine or treat patients alone.

48.    Defendant Nassar continued to treat patients alone.

49.    Through his position with MSU and his notoriety, defendant Nassar used his position of authority as a medical professional to abuse plaintiff without any reasonable supervision by MSU.

50.    Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of plaintiff or her parents.

51.    All of defendant Nassar's acts were conducted under the guise of providing medical care at his office or through his position at Michigan State University and through his "outreach" services.

52.    In 1999, an MSU student athlete reported to trainers and her coach, who were both employees of MSU, concerns about Nassar's conduct and "treatment", yet MSU failed to take the appropriate action, as required by law, and respond to her complaints, which would have resulted in plaintiff not being assaulted by Nassar in the first place.

53.     Defendant MSU had an obligation under federal and state law to investigate this report of sexual assault.

54.     Defendant MSU also had the following obligations, among others, pursuant to its Office of Institutional Equity ("OIE") policy:

    a.  "To properly take steps to investigate or otherwise determine what occurred and then to address instances of relationship violence and sexual misconduct when it knows or should have known about such instances;

    b.  To inform the MSU police of all reports it receives regarding sexual assaults;

    c.  To take immediate steps to initiate the investigatory process to determine what happened and resolve the matter properly and equitably;

    d.  To take prompt, responsive actions to support a claimant and will take steps to eliminate, prevent, or address a hostile environment if it determines that one exists;

    e.  To conduct a prompt, adequate, reliable, and partial investigation to determine what occurred and then to take appropriate steps to resolve the situation when it learns of an incident of sexual misconduct;

    f.  Independently investigate complaints of relationship violence and sexual misconduct;

    g.  To conduct an investigation by the office of institutional equity under the direction of Deputy Title IX coordinator for investigations; and

    h.  To properly report allegations of sexual misconduct to the office of institutional equity.

55.     Upon information and belief, in violation of federal law, state law, and the Michigan State University OIE policy, defendant MSU failed to take any action in response to the 1999 complaint.

56.     In 2000, another MSU student athlete reported to trainers concerns about Nassar's conduct and treatment, yet again MSU failed to take any action in response to her complaints.

57.     Upon information and belief and in violation of federal law, state law, and the Michigan State University OIE policy, MSU failed to take any action in response to the 2000 complaint.

58.     Had MSU taken the appropriate action, including, but not limited to, conducting an appropriate investigation, its conclusions would have been different and plaintiff would have never been assaulted by Nassar.

59.     Additional complaints regarding Nassar's conduct came forth in 2014. A victim reported that she had an appointment with Nassar to address hip pain and was sexually abused and molested by Nassar when he cupped her buttocks, massaged her vaginal area and became sexually aroused.

60.     MSU dismissed the victim's complaint, stating that the complainant did not understand the "nuanced difference" between sexual assault and appropriate medical procedure. MSU further deemed Nassar's conduct "medically appropriate" and "not of a sexual nature."

61.     As early as 1997, representatives of Michigan State University were made aware of defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault abuse and molestation of plaintiff through approximately 2016.

62.     Michigan State University's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of plaintiffs was in violation of Title IX of the Education

Amendment of 1972, 20 USC § 1681 *et seq*, 42 USC § 1983 as well as other Federal and State laws.

63.     MSU's failure to properly supervise defendant Nassar and its negligence in retaining defendant Nassar were in violation of Michigan common law.

64.     In late November of 2016, defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first degree criminal sexual conduct with a person under thirteen. Defendant Nassar pled guilty and is currently serving a 40-175 year prison sentence for the Ingham County convictions. Nassar was also charged and pled guilty to three charges of criminal sexual conduct in Eaton County, Michigan and on February 5, 2018 was sentenced to 40-125 years in prison.

65.     In December 2016, defendant Nassar was indicted, arrested and charged in Federal Court in Grand Rapids, Michigan on charge of possession of child pornography and receipt/attempted receipt of child pornography. Nassar pled guilty to multiple child pornography charges and on February 5, 2018 received a sentence of 60 years.

66.     The acts, conduct, and omissions of defendant Michigan State University and its policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of plaintiff and an unknown number of individuals, and has resulted in repeated instances of sexual assault, abuse, and molestation of plaintiff by defendant Nassar, which has been devastating for plaintiff and her family.

67.     This action arises from defendants' blatant disregard for plaintiff's Federal and State rights, and defendant's deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse and molestation.

## JURISDICTION AND VENUE

68.    This action is brought pursuant to Title IX of the Educational Amendment of 1972, 20 USC § 1681 *et seq*, as more fully set forth herein.

69.    This is also an action to redress the deprivation of plaintiffs' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 USC § 1983.

70.    Subject matter jurisdiction is found upon USC § 1331 which give district court's jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

71.    Subjection matter jurisdiction is also found in 28 USC § 1343 which gives district court's original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, customer usage, or any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States and any civil action to recover damages or to secure equitable relief under any act of Congress providing for the protection of civil rights.

72.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 USC § 1367(a) to hear and decide claims arising under State law that are still related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

73.    The claims are cognizable under the United States Constitution, 42 USC § 1983, 20 USC § 1681 *et seq* and under Michigan law.

74.    All of the events giving rise of this lawsuit occurred in Ingham County, Michigan which sits in the Southern division of the Western district of Michigan. Some other events occurred in other areas of Michigan, other states, and in foreign countries.

75.    Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 USC § 1391(b)(2), and that this is a judicial district in which the events giving rise to the claim occurred because Michigan State University is a public university organized and existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a notice of intention to file claim in order to maintain any action against the state. In satisfaction of MCL § 600.6431 plaintiffs filed Notices of Intent to file claims with the Michigan Court of Claims pursuant to MCL 600.6431on August 3, 2018 (**Exhibit 1**).

## PARTIES AND KEY INDIVIDUALS

76.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

77.    The name of the plaintiff has been withheld from this complaint to protect her identity as she is still a minor.

78.    Plaintiff Jane R6 Doe is a minor female and resident of the State of Michigan. She was a minor at all times she was sexually assaulted, abused and molested by defendant Nassar. All of the many sexual assaults by Defendant Nassar occurred in Ingham County.

79.    Defendant Laurence "Larry" Nassar, was a Doctor of Osteopathic Medicine and was at all times relevant hereto a resident of the State of Michigan. Nassar is currently serving a sixty five year prison sentence in Arizona.

80.    Defendant Michigan State University was at all relevant times and continues to be a public university organized and existing under the laws of the State of Michigan.

81.    Defendant Michigan State University receives Federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 USC § 1681(a).

82.    Defendant the Board of Trustees of Michigan State University is the governing body for Michigan State University.

83.    Defendant Jeffrey Kovan, D.O. is or was Director of Sports Medicine at Michigan State University.

84.    Defendant Gary Stollak, Ph.D., is or was a Michigan State University clinical psychologist and Professor of Psychology.

85.    Defendant Destiny Teachnor-Hauk is or was an athletic trainer for defendant Michigan State University for various sports including, but not limited to, softball, track and field, gymnastics, rowing and volleyball.

86.    William D. Strampel, D.O. was the Dean of the College of Osteopathic Medicine of Michigan State University serving as Dean since approximately 2002 and was the acting dean until his dismissal in 2018.

87.    Red Cedar Gymnastics and USAG referred plaintiff to Nassar for treatment.

88.    On February 2, 2018, defendant Strampel's computer in his MSU office was seized under a search warrant.  It contained 50 pornographic images, many of which were thought to be of MSU students. Among additional pornographic videos, a video of defendant Nassar performing "treatment" on a young female patient was found.

89.    At all relevant times defendant Strampel was defendant Nassar's supervisor.

90.    On February 9, 2018, MSU interim president John Engler filed a request to the Office of the Provost to begin terminating defendant Strampel's employment at MSU.

91.    On March 26, 2018, defendant Strampel was arrested and charged with fourth

degree criminal sexual conduct, a felony count of misconduct in office and two misdemeanor counts of willful neglect.

92.    Defendant Kathy Klages was the head coach of the Michigan State University gymnastics program until her suspension and resignation in early 2017; she also conducted gymnastics classes and programs for children and young adults not on the varsity gymnastics team.

93.    Defendant USAG was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States including, but not limited to, the State of Michigan, the State of Indiana and the State of Texas.

94.    USAG advertises on its website: "Since 1990 – prior to almost all other National Governing Bodies – USA Gymnastics has provided awareness, prevention and reporting information regarding sexual misconduct to professional members, athlete members and their families."

95.    Steve Penny was the president of defendant USAG from approximately April 2005 to March 2017. He was responsible for the overall management and strategic planning of defendant USAG.

96.    Defendant USAG requires member clubs to pay it a fee in order to hold defendant USAG sanctioned events and training.

97.    Defendant USAG also issues rules and requirements for its member clubs and member athletes and exercises degree of control over its member clubs because defendant USAG has the authority to revoke a club's membership.

98.    Defendant USAG also requires all coaches, judges, and athletes to pay it a membership fee if they want to participate in USA Gymnastics sanctioned events and training.

99.    Defendant USAG received a benefit from its relationship with defendant Nassar in the form of medical services rendered to its member athletes, national and global exposure, fame, and increased enrollment.

## COUNT ONE

## VIOLATION OF TITLE IX OF THE EDUCATION ACT OF 1972; 20 U.S.C. § 1681 *et seq*

### Against Michigan State University Defendants

100.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

101.    "No *person* in the United States shall on the basis of sex, be ... subject to discrimination under any education program or activity receiving Federal financial assistance ..." 20 USC § 1681(a). (emphasis added)

102.    Title IX also protects third parties from sexual harassment or violence in a school's educational program and activities. US Department of Ed. Office of Civil Rights, Dear Colleague Letter: Sexual Violence, April 4, 2011, at 4 n11, https://www.2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html.

103.    Plaintiff is a "person" within the meaning of 20 USC § 1681(a).

104.    MSU receives Federal Financial Assistance for its education program is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 USC § 1681 *et seq*.

105.    MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment, including, specifically, allegations of sexual abuse, sexual assault, or sexual harassment has been committed by an employee.

106.    Defendant Nassar's actions and conduct was carried out under one or more of MSU's programs, which provides medical treatment to students, athletes and the general public.

107.    Defendant Nassar's conduct and actions towards plaintiff, that being nonconsensual digital vaginal penetration, touching of plaintiffs' vaginal area constitutes sex discrimination under Title IX.

108.    As early as 1997 or 1998 an "appropriate person" at defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by defendant Nassar.

109.    In or around 1999 the MSU defendants were also put on notice of defendant Nassar's conduct by a MSU student and track and cross-country athlete, Christie Achenbach, after she complained to MSU employees, including trainers and her head coach, Kelli Bert, that defendant Nassar touched her vaginal area although she was seeking treatment for an injured hamstring.

110.    Despite her complaints to defendant MSU's employees, agents, and/or representatives, including trainers and head coaches, Christie Achenbach's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

111.    Upon information and belief, defendant MSU was notified in 2000 that defendant Nassar committed acts of sexual assault, battery, molestation, and harassment when a student athlete, Tiffany Thomas Lopez, reported to MSU employees, agents, and/or representatives, including the highest ranking employees within MSU's Training Staff, that defendant Nassar touched her vaginal area on multiple occasions and inserted his ungloved hand into her vagina, although she was seeking treatment for back pain. This would be at least the third report of sexual abuse or assault by defendant Nassar.

112.    Upon information and belief, an employee, agent, and/or representative of defendant MSU, who was one of three individuals that supervised the training department, told

Tiffany Thomas Lopez that what happened to her was not sexual abuse, that defendant Nassar was a world renowned doctor, that she was not to discuss what happened, and that she was to continue seeing defendant Nassar for purported treatment.

113. One of the trainers that Ms. Lopez reported to was Lianna Hadden, who is still presently employed by MSU as an athletic trainer with the volleyball team.

114. After reporting the assault to Ms. Hadden, Ms. Lopez also reported the assault to Destiny Teachnor-Hauk.

115. Ms. Lopez told Teachnor-Hauk that she was "extremely uncomfortable," but Teachnor-Hauk told Ms. Lopez that Nassar was engaged in actual medical treatment.

116. Teachnor-Hauk further dissuaded Ms. Lopez from reporting Nassar's conduct by telling Ms. Lopez that if Lopez pursued the matter further that it would cast a burden over her family and cause Ms. Lopez a lot of heartache and trauma.

117. Teachnor-Hauk also defended Nassar by stating to Ms. Lopez why she would want to drag Nassar through an allegation of sexual assault.

118. Despite her complaints to defendant MSU employees, agents, and/or representatives, including the highest ranking employees within MSU's Training Staff, Tiffany Thomas Lopez's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

119. Upon information and belief, defendant MSU was notified in approximately 2001 or 2002 that defendant Nassar committed acts of sexual assault, battery, molestation, and harassment when Jennifer Rood Bedford, an MSU student athlete on the women's volleyball team, was sexually assaulted and abused during "treatment" by defendant Nassar and reported

defendant Nassar's conduct to defendant MSU's employees, including MSU athletic trainer Lianna Hadden. This would be the fourth report of sexual abuse or assault by Defendant Nassar.

120.    According to Ms. Bedford, Nassar was known among the women's volleyball team as the "crotch doc" because of his "unconventional methods" of treating sports injuries with vaginal penetrations.

121.    Ms. Hadden dissuaded Ms. Bedford from filing a formal complaint against Nassar because it would result in an investigation against Nassar, making an accusation against Nassar and statement that she felt that what Nassar did was unprofessional or criminally wrong.

122.    The MSU defendants failed to carry out their duties to investigate and take corrective action under Title IX following complaints of sexual assault, abuse and molestation in or around 1999 and/or 2000 through 2012.

123.    Three months after initiating an investigation, in July of 2014, the victim complaints were dismissed and defendant MSU determined she didn't understand "the nuanced difference" between sexual assault and appropriate medical procedure and deemed defendant Nassar's conduct "medically appropriate" and "not of a sexual nature."

124.    Following the investigation, upon information and belief, defendant Nassar became subject to new institutional guidelines, one of which, is believed, was that defendant Nassar was not to examine or treat patients alone.

125.    The MSU defendants failed to adequately supervise or otherwise ensure that defendant Nassar complied with the newly imposed institutional guidelines even though the MSU defendants had actual knowledge Nassar posed a substantial risk of additional sexual abuse of females whom he had unfettered access. The MSU defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

    a.   failing to investigate and address allegations as required by Title IX;

    b.   failing to adequately investigate and address the 2014 complaint regarding defendant Nassar's conduct; and,

    c.   failing to institute corrective measures to prevent defendant Nassar from violating and sexually abusing other students and individuals, including minors.

126.    The MSU defendants acted with deliberate indifference as its lack of response of the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, defendant Nassar's actions with female athletes, and his access to young girls and young women.

127.    Nassar's actions and conduct towards plaintiff of nonconsensual sexual assault, battery, and molestation, which includes, unconsented touching and rubbing of plaintiffs' genitalia, constitute sex discrimination under Title IX.

128.    After the 1999, 2000, and 2014 complaints, defendant Nassar continued to sexually assault, abuse and molest individuals including plaintiff.

129.    The MSU defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice objected plaintiffs to further harassment in a sexually hostile environment, affectively denying them all access to educational opportunities at MSU, including medical care.

130.    Defendant MSU's failure to comply with Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, 42 U.S.C. 1983, and other federal and state laws, as described in this Complaint, contributed to the creation of a sexually hostile environment on MSU's campus between 1997 and 2018.

131.    In 2014, following receipt of an unrelated complaint regarding a sexual assault on defendant MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and defendant MSU's response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.

132.    The OCR concluded their investigation in 2015 and presented defendant MSU with a twenty-one-page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring defendant MSU in compliance with Title IX.

133.    The report confirmed that the *"OCR determined that the University's Title IX grievance procedures, in place during the time period covered by OCR's investigation, failed to comply with the requirements of Title IX."*

134.    The report further confirmed that the *"OCR determined that a sexually hostile environment existed for and affected numerous students and staff on campus at the University during the time period covered by OCR's investigation; and that the University's failure to address complaints of sexual harassment, including sexual violence, in a prompt and equitable manner caused and may have contributed to a continuation of this sexually hostile environment."*

135.    While the OCR was conducting its investigation, additional complaints regarding defendant Nassar's conduct surfaced in 2014. Amanda Thomashow reported she had an appointment with defendant Nassar to address hip pain and was sexually abused and molested by defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area and he became sexually aroused.

136.    Upon information and belief, Kristine Moore, an attorney investigator in

defendant MSU's Title IX office investigated the 2014 complaints.

137.    However, Amanda Thomashow reported to defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

1.    Defendant Nassar was sexually aroused while touching her; and

2.    The appointment with Defendant Nassar did not end until Amanda Thomashow physically removed his hands from her body.

138.    Three months after initiating the investigation, in July 2014, Amanda Thomashow's complaints were dismissed and defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed defendant Nassar's conduct "medically appropriate" and "not of a sexual nature."

139.    Following the investigation, on or about July 30, 2014, defendant Strampel sent an e-mail to defendant Nassar that provided new institutional guidelines and restrictions that defendant Nassar was subject to including:

a.  Defendant Nassar was not to examine or treat patients alone but was to be accompanied by a chaperone such as a resident or nurse;

b.  The alleged "procedure" was to be altered to ensure there would be little to no skin to skin contact when in certain "regions" and if skin to skin contact was "absolutely necessary" the "procedure" was to be explained in detail with another person in the room for both the explanation and the "procedure;" and,

c.  New people in the practice were to be "oriented" to ensure understanding with the guidelines.

140.    Defendant Strampel sent a copy of the July 30, 2014 e-mail that outlined defendant Nassar's restrictions and guidelines to Dietzel.

141.    At all relevant times defendant Strampel was acting in a supervisory role to defendant Nassar.

142.    The MSU defendants failed to take any actions to enforce or ensure that defendant Nassar was in compliance with the restrictions outlined by defendant Strampel in his July 30, 2014 e-mail to defendant Nassar.

143.    Upon information and belief, the MSU defendants failed to take any action to orient new MSU employees to ensure that they were aware of the restrictions placed on Nassar.

144.    As a direct and/or proximate result of the MSU defendants' actions and/or inactions, plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing plaintiffs' daily activities and obtaining the full enjoyment of life and has sustained and will sustain loss of earnings and earning capacity.

## COUNT TWO

## VIOLATION OF CIVIL RIGHTS
### 42 USC § 1983

### Against the MSU Defendants, Defendant Nassar

145.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

146.    Plaintiff is a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

147.    Plaintiff enjoys the constitutionally protected due process right to be free from the invasion of bodily integrity through sexual assault, abuse or molestation.

148.    At all relevant times, defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or defendant Michigan State University.

149.    The acts of the alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU defendant's position should have known.

150.    The MSU defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives in the appropriate manor of detecting, reporting, and preventing sexual abuse, assault and molestation, as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

151.    As a matter of customs, policy, and/or practice, the MSU defendants had and have had the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff or other employees, agents, and/or representatives, and public, and failed to do so with deliberate indifference.

152.    The MSU defendants had a duty to prevent sexual assault, abuse and molestation on their campus and premises, including defendant Nassar's "outreach programs", that duty arising under the above reference constitutional right, as well as the established rights pursuant to Title IX.

153.    Defendant MSU's internal policies provide that "all University employees… are expected to promptly report sexual misconduct of relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further "that the employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at campus sponsored events…"

154.    This policy was violated in or around 1999 when a victim reported sexual assault, abuse, and molestation by defendant Nassar to MSU representatives, including trainers and a coach and no action was taken to address a complaint.

155.    Defendant MSU's internal policies were again violated in 2000 when another victim reported sexual assault, abuse, and molestation by defendant Nassar to MSU representatives, including trainers and no action was taken to address her complaint.

156.    The MSU defendants failure to address the 1999 and 2000 complaints lead to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by defendant Nassar, including plaintiff.

157.    Additionally, as a continuing pattern of conduct, the MSU defendants failure to properly address the 2014 complaint regarding defendant Nassar conduct also lead to others being victimized, sexually assaulted, abused, and molested by defendant Nassar. Ultimately, defendants failed to adequately and properly investigate complaints, including, but not limited to:

    a.  perform an investigation into improper conduct by defendant Nassar after receiving complaints in 1999 and 2000;

    b.  thoroughly review and investigate all policies, practices, procedure and training materials related to the circumstances surrounding the conduct of defendant Nassar;

    c.  recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and,

    d.  ensure all institutional guidelines issued found in the 214 investigation into defendant Nassar's conduct were satisfied.

158.    As indicated in the US Department of Education office of Civil Rights Report, the MSU defendants had a culture that permitted a sexually hostile environment to exist, affecting numerous individuals on defendant MSU's campus, including plaintiff.

159.    As also discussed in its report, defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including, but not limited to, sexual violence in a prompt and equitable manner, caused and may have contributed to a continuation of the sexually hostile environment.

160.    By failing to prevent the aforementioned sexual assault, abuse, and molestation of plaintiff, and by failing to appropriately respond to reports of defendant Nassar's sexual assault, abuse, and molestation in a manner that was clearly unreasonable, such conduct amounted to deliberate indifference, the MSU defendants are liable to plaintiff pursuant to 42 USC § 1983.

161.    The MSU defendants are also liable to plaintiff under 42 USC § 1983 for maintaining customs, policies, and practices, which deprived plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution.

162.    The MSU defendants tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline defendant Nassar with the result that defendant Nassar continued to violate the rights of persons such as plaintiff, with impunity.

163.    As a direct and proximate result of MSU defendants actions and inactions, plaintiff has suffered and continue to suffer of pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to

be prevented from performing daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT THREE

## VIOLATION OF THE ELLIOT LARSEN CIVIL RIGHTS ACT MCL 37.2101

### Against the MSU Defendants, Defendant Nassar

164.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

165.    The Elliot-Larsen Civil Rights Act ("Elliot-Larsen") prohibits discrimination based on sex. MCL 37.2101.

166.    Discrimination because of sex includes sexual harassment MCL 37.2103(i).

167.    Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature MCL 37.2013(i).

168.    Elliot-Larsen protects against sexual harassment in educational institutions.

169.    MSU is an educational institution pursuant to MCL 37.2401.

170.    An educational institution shall not "discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of ... sex." MCL 37.2401(a).

171.    Elliot Larsen also protects against sexual harassment in places of public accommodation. MCL 37.2302. Under this section, an individual shall not be denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of a place of public accommodation or public service because of...sex." MCL 37.2302(a). MSU is a "place of public accommodation" because its "services, facilities, privileges, advantages or

accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2301(a).

172.    Plaintiff is a person within the meaning of MCL 37.2103(g).

173.    Nassar's actions and conduct were carried out under one of MSU's programs, which provide medical treatment to students, athletes, and the general public, wherein MSU, through MSU Sports Medicine Clinic, solicits and markets to people like plaintiff, in places plaintiffs participates in sports or other athletic events and various "outreach" programs..

174.    Nassar's actions and conduct toward plaintiff denied her the full and equal enjoyment of MSU services at a place of public accommodation, in violation of Elliot Larsen.

175.    Nassar's actions and conduct toward plaintiff of nonconsensual sexual assault, battery, and molestation, which included unconsented touching and rubbing of plaintiff's genitalia and unconsented digital penetration of plaintiff's vagina constitutes sex discrimination under Elliot Larsen.

176.    As a direct and proximate result of the MSU and Nassar actions and inactions, plaintiff has suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, and loss of enjoyment of life, which prevented and will be continued to be preventive from performing daily activities and obtaining the full enjoyment of life, and will sustain loss of earning and earning capacity.

## COUNT FOUR

### FAILURE TO TRAIN AND SUPERVISE
#### 42 USC § 1983

#### Against the MSU Defendants and MSU Trustees

177.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

178.    The MSU defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives including defendant Nassar and all faculty and staff regarding their duties to its students, faculty, staff and visitors.

179.    The MSU defendants failed to train and supervise its employees, agents, and/or representatives, including all faculty and staff, regarding the following duties:

   a.   pursue, report and stop inappropriate sexual conduct on campus;

   b.   provide diligent supervision over student athletes and other individuals;

   c.   report suspected incident of sexual abuse or sexual assault;

   d.   insure the safety of all students, faculty, staff and visitors to defendants MSU campus premises;

   e.   provide a safe environment of all students, faculty, staff, and visitors to defendant MSU's premises free from sexual harassment; and,

   f.   properly train faculty and staff to be aware of their individual responsibilities for cleaning and maintaining a safe environment.

180.    The above listed duties are not exhaustive.

181.    The MSU defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties, which led to violations of plaintiff rights.

182.    As a result, the MSU defendants deprived plaintiff of her rights secured by the Fourteenth Amendment to the United States Constitution, in violation of 42 USC § 1983.

183.    As a direct and proximate result of MSU defendant actions and inactions, plaintiff has suffered and continue to suffer pain of mind and body, shock, emotional distress, physical

manifestation of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, and loss of enjoyment of life, which prevented and will be continued to be preventive from performing daily activities and obtaining the full enjoyment of life, and will sustain loss of earning and earning capacity.

## COUNT FIVE

## GROSS NEGLIGENCE

### Against MSU Defendants, MSU Board of Trustees and Defendant Nassar

184.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

185.    The MSU defendants owed plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including defendant Nassar.

186.    Defendant Nassar owed plaintiff a duty of due care in carrying out medical treatment as an employee, agents, and/or representative of the MSU defendants.

187.    By seeking medical treatment from defendant Nassar in the course of his employment, agency, and/or representation of the MSU defendants, a special, confidential, and fiduciary relationship between plaintiff and defendant Nassar was created, resulting in defendant Nassar owing plaintiff a duty to use due care.

188.    The MSU defendants failed to adequately supervise defendant Nassar especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatment", and said failure to adequately supervise was so reckless that it demonstrated a substantial lack of concern for whether an injury would result to plaintiff.

189.    Defendant Nassar's conduct of sexually assaulting, abusing, and molesting plaintiff in the course of his employment, agency, and/or representation of the MSU defendant, and under the guise of rendering "medical treatment", were so reckless that it demonstrated a substantial lack of concern for whether an injury would result to plaintiff.

190.    The MSU defendant's conduct demonstrated a willful disregard for precautions to ensure plaintiff's safety.

191.    The MSU defendant's conduct, as described in this complaint, demonstrated a willful disregard for substantial risk to plaintiff.

192.    The MSU defendant's breached duties owed to plaintiff and was grossly negligent when they conducted themselves by the actions described above, said act had been committed with reckless disregard for plaintiff's health, safety, constitutional and/or statutory rights, and with substantial lack of concern to whether an injury would result and as a direct and proximate result of MSU defendant actions and inactions, plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, and loss of enjoyment of life, which prevented and will be continued to be preventive from performing daily activities and obtaining the full enjoyment of life, and will sustain loss of earning and earning capacity.

## COUNT SIX

## NEGLIGENCE

### Against MSU Defendants and Defendant Nassar

193.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

194.    The MSU defendants owed plaintiff a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

195.    By seeking medical treatment from defendant Nassar and in his capacity as an employee, agent, and/or representative of the MSU defendants, a special, confidential, and fiduciary relationship existed between plaintiff and defendant Nassar was created, resulting in defendant Nassar owing plaintiff a duty to use ordinary care.

196.    Defendant Nassar owed plaintiff a duty of ordinary care.

197.    The MSU defendant's failure to adequately train and supervise defendant Nassar breached the duty of ordinary care owed to plaintiff.

198.    The MSU defendants noticed through their employees, agents, and/or representatives as early as 1999, again in 2000, and again in 2014 of complaints of a sexual nature related to defendant Nassar's purported "treatments" with young girls and women.

199.    The MSU defendants should have known of the foreseeability of sexual abuse with respect to youth in sports and the performing arts and the continuation of that abuse.

200.    The MSU defendant's failure to properly investigate, address and remedy complaints regarding defendant Nassar's conduct was a breach of ordinary care.

201.    Defendant Nassar's conduct and sexually assaulting, abusing, and molesting plaintiff in the course of his employment, agency, and/or representation of the MSU defendants with a breach of his duty to use ordinary care and then as a direct and proximate result of MSU defendant actions and inactions, plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, and loss of enjoyment of life,

which prevented and will be continued to be preventive from performing daily activities and obtaining the full enjoyment of life, and will sustain loss of earning and earning capacity.

## COUNT SEVEN

### VICARIOUS LIABILITY

#### Against the MSU Defendants

202.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

203.    Vicarious liability is in direct responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

204.    Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

205.    The MSU defendants employed and/or held defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

206.    Defendant MSU's website contains hundreds of pages pertaining to defendant Nassar as a distinguished member of the defendant MSU College of Osteopathic Medicine, Division of Sports Medicine.

207.    The MSU defendants are vicariously liable for the actions of defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine and while performing "outreach" services at USAG and USAG sanctioned training centers, public schools and other organized competitive athletic events.

208.    As a direct and/or proximate result of MSU defendants actions and inactions, plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, and loss of enjoyment of life, which prevented and will be continued to be preventive from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and earning capacity.

## COUNT EIGHT

## EXPRESS/IMPLIED AGENCY

### Against the MSU Defendants

209.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

210.    An agent is a person who is authorized by another to act on its behalf.

211.    The MSU defendants intentionally or negligently made representations that defendant Nassar was their employee, agent, and/or representative. On the basis of those representations, plaintiff's reason to believe that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU defendants.

212.    Plaintiff was injured as a result of defendant Nassar's sexual assault, abuse and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU defendants and while he had unfettered access to young female athletes.

213.    Plaintiff was injured because she relied on the MSU defendants to provide employees, agents, and/or representatives who would exercise reasonable skill and care and then as a direct and proximate result of defendant Nassar's negligence carried out in the course of his

employment, agency, and/or representative of the MSU defendant, plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, and loss of enjoyment of life, which prevented and will be continued to be preventive from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and earning capacity.

**COUNT NINE**

**<u>NEGLIGENT SUPERVISION</u>**

**Against the MSU Defendants**

214.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

215.    The MSU defendants had a duty to provide reasonable supervision of their employees, agents, and/or representatives, defendant Nassar, while he was in his course of his employment, agency, and/or representation with the MSU defendants and while he interacted with young female athletes including plaintiff.

216.    It was reasonably foreseeable given the known sexual abuse in youth sports in gymnastics in particular that defendant Nassar who had prior allegations against him had or would have sexually abused children, including plaintiff, unless properly supervised.

217.    The MSU defendants by and through their employees, agents, managers, and/or assigns, such as President Simon, Dean Strampel, Gary Stollak, Jeffrey Kovan, Destiny Teachnor-Hauk, Kathie Klages knew or reasonably should have known of defendant Nassar's conduct and/or that defendant Nassar was an unfit employee, agent and/or representative because of his sexual interest in children.

218.    The MSU defendants breached their duty to provide reasonable supervision of defendant Nassar, and permitted defendant Nassar, who was in a position of trust and authority, to commit the acts against plaintiff.

219.    The aforementioned sexual abuse occurred mainly while plaintiff and defendant Nassar were on the premises of defendant MSU and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU defendants and at USAG and other locations while performing "outreach" services as directed by MSU.

220.    The MSU defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that defendant Nassar was allowed to violate the rights of persons such as plaintiff with impunity and then as a direct result of MSU defendant's negligent supervision, plaintiff has suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, and loss of enjoyment of life, which prevented and will be continued to be preventive from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will continued to sustain loss of earning and earning capacity.

## COUNT TEN

## FRAUDULENT CONCEALMENT

### Against MSU Defendants and Defendant Nassar

221.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

222.    Plaintiff sought treatment at defendant MSU's Sports Medicine Clinic or at

locations where defendant Nassar provided "outreach" services as directed by MSU and were in a special relationship in which they paid or were billed for medical treatment.

223.    Given the special relationship, the MSU defendants had a duty to disclose and to warn and protect the athletes and patients who sought treatment at its facility with its doctor.

224.    Plaintiff hereby alleges that the MSU defendants committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of plaintiffs' claims and that plaintiff had a cause of action against defendant Nassar and/or the MSU defendants at the time defendant Nassar's sexual assaults occurred by making a material representation(s) to plaintiff involving a past or existing fact by:

     a.    Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

     b.    Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

     c.    Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

     d.    Making the statement, explaining, that his acts and/or conduct as doing a "breast exam;"

     e.    Making the statement, explaining, that his acts and/or conduct was medical "treatment" or for a legitimate medical purpose;

     f.    Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate their ribs;" and,

     g.    Making a statement, explaining to plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating plaintiffs, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

225.    When defendants' agents and employees made the material representation(s), they knew that the statements were false when made, in that they knew or were aware that the

"treatments" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

226.    Defendants made the material representation(s) with the intent that the material representation(s) should be acted or relied upon by plaintiff or her parents, such that plaintiff:

      a.    Should believe that the "treatments" were in fact legitimate medical "treatments;"

      b.    Should believe that the "treatments" were proper, appropriate, and legitimate;

      c.    Should not believe that they had been sexually assaulted;

      d.    Should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

      e.    Should continue the "treatment[s]" so that he could continue to sexually assault them;

      f.    Should not question and/or report the conduct to appropriate authorities; and

      g.    Should not reasonably believe and not be aware of a possible cause of action that they have against defendant Nassar and/or defendant MSU.

233.    Plaintiff and her predecessor victims acted in reliance upon the material representation(s), in that plaintiff:

      1.    Reasonably believed that the "treatments" were in fact "treatments;"

      2.    Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

      3.    Reasonably did not believe that she had been sexually assaulted;

      4.    Believed that she should continue the "treatments;"

      5.    Did not believe that they should question and/or report the conduct to appropriate authorities; and,

      6.    Did not reasonably believe that she had and was not aware of a possible cause of action that she had against defendant Nassar and/or the MSU Defendants.

234.    Plaintiff as a result  suffered injury, in that plaintiff:

1. Could not stop the sexual assaults;

2. Continued to undergo the "treatments" and sexual assaults; and

3. Plaintiff suffered discomfort, and related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, depression, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and/or will sustain loss of earnings and earning capacity, among other injuries more fully described below.

235.    Concealing the fraud by making a fraudulent material representation(s) to plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of the fraud, in that defendant Nassar made a material representation(s) to plaintiff involving a past or existing fact by:

a. Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal or anal penetration;

b. Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c. Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d. Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e. Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

f. Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate their ribs;" and,

g. Making the statement that the position of his hand was in an appropriate place- when it was not-while he was digitally penetrating plaintiffs, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by defendant Nassar.

236.    Defendants' agents and employees concealed the fraud by affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that defendant Nassar:

      a.    Positioned himself in a manner in which a parent in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

      b.    Dismissed a medical professional from the room, during an examination of a plaintiff while he was digitally penetrating a plaintiff, who questioned the placement of his hands;

      c.    Prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of plaintiffs so that he could sexually assault plaintiff;

      d.    Did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

      e.    Did not abide by or follow the restrictions that had been put into place in 2014 by defendant MSU restricting his examination and treatment of patients only with another person in the room; and,

      f.    Gave other plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

237.    The actions and inactions of defendants, as described in the preceding paragraphs, constituted Fraudulent Concealment.

238.    At all times pertinent to this action, defendant Nassar was an agent, apparent agent, servant, and employee of defendant MSU and operated within the scope of his employment and his negligence is imputed to defendant MSU.

239.    At all times material hereto, plaintiff was entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

240.    Plaintiff did not know, could not have reasonably known, and was reasonably

unaware of a possible cause of action that she had against defendant Nassar and/or defendant

MSU until sometime around September 2016, for the following reasons amongst others:

1.  Plaintiff reasonably relied on the Fraud committed by defendant Nassar by his material representations and concealment of the true nature of his "treatments "and his actions;

2.  Plaintiff was a minor at the time of the assaults and "treatments;"

3.  Plaintiff did not know what a legitimate and appropriately performed intra-vaginal treatment was like because she had never experienced and/or had an intra-vaginal treatment before;

4.  Plaintiff had never experienced and/or had an intra-vaginal treatment before because she had never been treated by a physician and/or therapist that performed them;

5.  Plaintiff did not know what a legitimate and appropriately performed pelvic, vaginal, and/or breast exam was like because she had never experienced and/or had a pelvic, vaginal, and/or breast exam before;

6.  Plaintiff had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology;

7.  Plaintiff had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

8.  Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for plaintiff to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, and/or breast exam from a sexual assault;

9.  Plaintiff could not have possibly known because there were no chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform plaintiff that she had been sexually assaulted and had a cause of action against defendant Nassar;

10. In the instances where a parent was present in the room, defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing plaintiffs that they had been sexually assaulted and had a cause of action against defendant Nassar;

11. Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

12. Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

13. Plaintiff was intimidated by defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatments" were legitimate and appropriate;

14. Plaintiff trusted defendant Nassar due to his notoriety and reputation;

15. Plaintiff trusted defendant Nassar because he groomed her to believe that his "treatments" were legitimate;

16. Plaintiff trusted and felt that defendant Nassar was a friend because at appointments he gave plaintiff compliments, lengthy  appointments and befriended her parents in order to gain their trust;

17. Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action because she is a minor and a young female who was not knowledgeable or aware of any remedy at law;

18. Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

19. Plaintiff was never told by defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatments" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a

sexual nature and to conceal the sexual conduct from their parents and others;

20. Plaintiff was compelled by defendant Nassar to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport therefore the "treatments" were legitimate and appropriate;

21. Plaintiff was a minor and a young athlete; therefore, she was easily suggestible; and,

22. Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by defendant Nassar.

241. Defendant MSU's sports medicine trainers, employees, staff, managers, supervisors, directors, agents, apparent agents, and/or servants made material representation(s) to authorities and plaintiff involving a past or existing fact by making statements that:

a. Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments on young athletes;"

b. Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c. Defendant Nassar's conduct was "not sexual abuse;"

d. Defendant Nassar was a "world-renowned doctor;" and,

e. Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "not of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure."

242. The material representation(s) to plaintiff were false, in that the MSU defendants had previously received strikingly similar complaints of abuse by defendant Nassar from other patients, students, and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

243. When the MSU defendants made the material representation(s), they knew that

they were false and/or made the material representation(s) recklessly, without any knowledge of their truth and as a positive assertion, in that they knew that defendant MSU had previously received strikingly similar complaints of abuse by defendant Nassar from other students and student athletes and knew that the appropriateness of his "treatments" had been questioned in the past.

244.    The MSU defendants made the material representation(s) with the intent that the material representation(s) should be acted upon by plaintiff (or her parents), in that plaintiff:

    1.   Should believe that the "treatments" were in fact "treatments;"

    2.   Should believe that the "treatments" were proper, appropriate, and legitimate;

    3.   Should not believe that they had been sexually assaulted;

    4.   Should not question and/or report the conduct to other authorities; and,

    5.   Should not reasonably believe and not be aware of a possible cause of action that they have against defendant Nassar and/or the MSU defendants.

245.    Plaintiff acted in reliance upon the material representation(s), in that plaintiff:

    1.   Reasonably believed that the "treatments" were in fact "treatments;"

    2.   Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

    3.   Reasonably did not believe that she had been sexually assaulted;

    4.   Reasonably believed that she should continue the "treatments;"

    5.   Did not believe that she should question and/or report the conduct to appropriate authorities; and,

    6.   Did not reasonably believe that she had and was not aware of a possible cause of action that she had against defendant Nassar and/or defendant MSU.

246.    Plaintiff thereby suffered injury, in that plaintiff:

    1.   Could not stop the sexual assault(s);

2.  Continued to undergo the "treatments" and sexual assault(s);and,

3.  Suffered discomfort, related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, depression, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and/or will sustain loss of earnings and earning capacity, among other injuries more fully described below.

247.  The MSU defendants concealed the fraud by making a fraudulent material representation(s) to plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they made a material representation(s) to plaintiff involving a past or existing fact by:

a.  Making the statement that defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.  Making the statement that defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.  Making the statement that defendant Nassar's conduct was "not sexual abuse," that he was a "world-renowned doctor;" and,

d.  Making the statement that defendant Nassar's conduct and "treatments" were "medically appropriate" and "not of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure."

248.  The MSU defendants concealed the fraud by affirmative acts that were  designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they:

1.  Ignored, refused, and failed to inquire, question, and investigate the complaints and take action regarding defendant Nassar's "treatments;"

2.  Did not create a policy to require adults, parents, chaperones, guardians,

and/or caregiver's presence during an examination of a minor or female by a physician; and,

3.    Did not enforce the restrictions that had been put into place in 2014 by defendant MSU restricting his examination and treatment of patients only with another person in the room.

249.    Plaintiff did not know, could not have reasonably known, and was reasonably unaware of a possible cause of action that she had against defendant Nassar and/or the MSU defendants until the September 12, 2016 publication of a story regarding a complaint filed with defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or on or about the date of media reports of a plea of guilty by defendant Nassar wherein he admitted that the treatments were not medical treatments but rather sexual assaults, for the following reasons among others:

a.    Plaintiff reasonably relied on the Fraud committed by defendant Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

b.    Plaintiff is a minor and/or young female at the time of the assaults and "treatments;"

c.    Plaintiff did not know what a legitimate and appropriately performed intra-vaginal treatment was like because she had never experienced and/or had an intra-vaginal treatment before;

d.    Plaintiff had never experienced and/or had an intra-vaginal treatment before because she had never been treated by a physician and/or therapist that performed them;

e.    Plaintiff did not know what a legitimate and appropriately performed pelvic, vaginal, and/or breast exam was like because she had never experienced and/or had a pelvic, vaginal, and/or breast exam before;

f.    Plaintiff had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and

Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology to name a few.

g.  Plaintiff had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.  Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for plaintiff to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, and/or breast exam from a sexual assault;

i.  Plaintiff could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during most of the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform plaintiff that they had been sexually assaulted and had a cause of action against defendant Nassar;

j.  In the instances where a parent was present in the room, defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing plaintiffs that they had been sexually assaulted and had a cause of action against defendant Nassar;

k.  Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l.  Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m.  Plaintiff was intimidated by defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n.  Plaintiff trusted defendant Nassar due to his notoriety and reputation;

o.  Plaintiff trusted defendant Nassar because he groomed her to believe that his "treatments" were in fact legitimate "treatments;"

p.  Plaintiff trusted and felt that defendant Nassar was a friend because he

gave plaintiff compliments, lengthy appointments, and befriended her parents in order to gain their trust;

q.    Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action because she was a minor and young female who was not knowledgeable or aware of the civil justice system and remedies;

r.    Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by defendant Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

s.    Plaintiff was never told by defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatments" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

t.    Plaintiff was compelled by defendant Nassar and MSU to undergo "treatments" like other athletes if she wanted to continue being involved in her relevant sport therefore the "treatments" were legitimate and appropriate;

u.    Plaintiff is a minor and young athlete; therefore, she was easily suggestible;

v.    Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by defendant Nassar;

w.    Plaintiff reasonably relied on the Fraud committed by defendant MSU by its material representations and concealment of the true nature of defendant Nassar's "treatments" and his actions;

x.    Plaintiff trusted defendant MSU, that they would protect plaintiff from harm and not hire, employee, and/or retain a physician that had, was, or would perform illegitimate and/or inappropriate "treatments," engage in inappropriate conduct, and/or sexually assault patients, students, and/or athletes;

y.    Plaintiff was never told by defendant MSU that defendant Nassar's conduct and "treatments" were inappropriate and sexual assaults, to the contrary plaintiffs and/or her predecessor victims was/were told that defendant Nassar's conduct and "treatments" were appropriate and legitimate

"treatment[s]," "not sexual abuse," "medically appropriate," and "not of a sexual nature" from a "world-renowned" and "Olympic doctor," who "knew what he was doing" and that plaintiffs, because of their age and inexperience with intra- vaginal treatment, pelvic, vaginal, and/or breast exams, "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure;" and,

    z.   Plaintiff reasonably relied on defendant MSU to protect them and defendant MSU's statements.

250.    The actions and inactions of the MSU defendants and their agents and employees, as described in the preceding paragraphs, constituted Fraudulent Concealment.

251.    At all times pertinent to this action, defendant Nassar was an agent, apparent agent, servant, and employee of defendant MSU and operated within the scope of his employment and his Fraudulent Concealment is imputed to defendant MSU.

252.    The actions and inactions of the sports medicine trainers, employees, staff, managers, supervisors, and directors of the MSU defendants, as described in the preceding paragraphs, constituted Fraudulent Concealment.

253.    At all times pertinent to this action, the sports medicine trainers, employees, staff, managers, supervisors, and directors of defendant MSU were agents, apparent agents, servants, and employees of defendant MSU and operated within the scope of their employment and their Fraudulent Concealment is imputed to defendant MSU.

254.    At all times material hereto, plaintiff was entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## COUNT ELEVEN

### DEFENDANT NASSAR

#### Against Defendant Nassar

255.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs.

256.    Plaintiff had a special relationship with defendant Nassar given her physician-patient relationship.

257.    Given the special relationship, defendant Nassar had an affirmative duty to disclose and to warn and protect athletes and patients who sought his medical treatment from sexual abuse, assault, and molestation.

258.    Plaintiff incorporate by reference the Fraud claims made below and hereby allege that defendant Nassar committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of plaintiff's claims and that plaintiff had a cause of action against defendant Nassar and/or defendant MSU at the time his sexual assaults occurred by defendant Nassar making a material representation(s) to plaintiff and/or her predecessor victims involving a past or existing fact by:

    a.    Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.    Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.    Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d.    Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.    Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

    f.    Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate their ribs;" and,

    g.    Making a statement, explaining to plaintiff and another medical professional that the position of his hand was in an appropriate place-when it was not-and while he was digitally penetrating plaintiffs, all of which were made

contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by defendant Nassar.

259.    The material representation(s) to plaintiff by defendant Nassar were false in that he was actually performing them for his own sexual gratification and pleasure.

260.    When defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatments" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

261.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by plaintiff, in that plaintiff:

    1.    Should believe that the "treatments" were in fact "treatments;"

    2.    Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

    3.    Should not believe that she had been sexually assaulted; should not believe that she had been sexually assaulted so that he could prevent discovery of his sexual assaults;

    4.    Should continue the "treatments" so that he could continue to sexually assault her;

    5.    Should not question and/or report the conduct to appropriate authorities; and,

    6.    Should not reasonably believe and not be aware of a possible cause of action that she may have against defendants Nassar, Stollak, Kovan, Teachnor-Hauk, and/or Geddert.

262.    Plaintiff acted in reliance upon defendant Nassar's material representation(s), in that plaintiff:

    1.    Reasonably believed that the "treatments" were in fact "treatments;"

    2.    Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

    3.    Reasonably did not believe that she had been sexually assaulted;

4.      Believed that she should continue the "treatments;"

5.      Did not believe that she should question and/or report the conduct to appropriate authorities; and did not reasonably believe that she had and was not aware of a possible cause of action that she had against defendants Nassar, Stollak, Kovan, Teachnor-Hauk, and/or Geddert.

263.    Plaintiff thereby suffered injury, in that plaintiff:

1.      Could not stop the sexual assault;

2.      Continued to undergo the "treatment[s]" and sexual assault(s); and,

3.      Plaintiff suffered discomfort, infections, related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, depression, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing her' daily activities and obtaining the full enjoyment of life, and has sustained and will sustain loss of earnings and earning capacity, among other injuries more fully described below.

264.    Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to plaintiff and other victims involving a past or existing fact by:

1.  Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

2.  Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

3.  Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

4.  Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

5.  Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

6. Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

7. Making a statement, explaining to plaintiff and another medical professionals that the position of his hand was in an appropriate place-when it was not-and while he was digitally penetrating plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by defendant Nassar.

265.    Defendant Nassar concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a. Positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b. Dismissed a medical professional from the room, during an examination of a plaintiff while he was digitally penetrating a plaintiff, who questioned the placement of his hands;

c. Prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of plaintiffs so that he could sexually assault plaintiffs;

d. Did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

e. Did not abide by or follow defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, or any similar policies established by Defendant Twistars or Defendant Geddert, by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

f. Gave plaintiff, at appointments, compliments, lengthy appointments, and befriended her parents in order to gain their trust.

266.    The actions and inactions of defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

267.    At all times pertinent to this action, defendant Nassar was an agent, apparent

agent, servant, and employee of defendant MSU and USAG, and operated within the scope of his employment and his Fraudulent Concealment is imputed to defendants MSU and USAG,

268.    At all times material hereto, plaintiff was entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## COUNT TWELVE

## GROSS NEGLIGENCE – MCL 691.1407(2)(c)

### Against MSU Defendants and Defendant Nassar

269.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

270.    The MSU defendants owed plaintiff a duty of due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

271.    Defendant Nassar owed plaintiff a duty to use due care in providing medical treatment as an employee, agent, and/or representative of the MSU defendants.

272.    A special, confidential, and fiduciary relationship was created between plaintiff and defendant Nassar when plaintiff sought medical treatment from defendant Nassar in the course of his employment, agency, and/or representation of the MSU defendants, resulting in defendant Nassar owing plaintiff a duty to use due care.

273.    A special, confidential, and fiduciary relationship was created and existed at all times pertinent hereto between the MSU defendants and defendant Nassar, as described herein this complaint, resulting in the MSU defendants owing plaintiff a duty to use due care.

274.    The MSU defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse.

275.    The MSU defendants had notice of complaints of a sexual nature related to defendant Nassar's purported treatment with young girls and women through defendant MSU employees, agents, and/or representatives as early as 1997/1998, again in 1999, again in 2000, again in 2001/2002, again in 2004, and again in 2014, as described in this complaint.

276.    The MSU defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known in 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014, as described in this complaint.

277.    The MSU defendants' failure to adequately train and supervise defendant Nassar, especially after the MSU defendants knew or should have known of other and previous complaints regarding defendant Nassar's conduct, was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to plaintiff.

278.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting plaintiff in the course of his employment, agency, and/or representation of the MSU defendants under the guise of proper medical treatment was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to plaintiff.

279.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting plaintiff in the course of his employment, agency, and/or representation of the MSU defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether injury would result to plaintiff.

280.    The MSU defendants' conduct and the conduct of their individual employees and agents demonstrated a willful disregard for precautions to ensure plaintiff's safety.

281.    The MSU defendants knew or should have known of complaints pertaining to defendant Nassar's nonconsensual sexual touching and assaults that occurred under the guise of

medical treatment.

282.    The MSU defendants' conduct demonstrated a willful disregard for substantial risks to plaintiff.

283.    The MSU defendants breached duties owed to plaintiff and were grossly negligent when they conducted themselves in the manner described in this complaint. These acts by the MSU defendants were committed with reckless disregard to plaintiff's safety, health, constitutional and/or statutory rights, and with substantial lack of concern to whether injury resulted to plaintiff.

284.    The MSU defendants failed to warn or advise current and former patients of defendant Nassar, including plaintiff, that allegations could surface that, in fact, the treatments that the patients received were not medical treatment at all but were potentially sexual assaults.

285.    The MSU defendants failed to offer counseling services to current of former patients of defendant Nassar, including plaintiff.

286.    As a direct and proximate result of the MSU defendants' and defendant Nassar's actions and/or inactions, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

287.    As a direct and/or proximate result of defendants' gross negligence, plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, depression embarrassment, loss of self-

esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing plaintiffs' daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earnings and earning capacity.

## COUNT THIRTEEN

## NEGLIGENT FAILURE TO WARN OR PROTECT

### Against the MSU Defendants

288.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

289.    The MSU defendants knew or should have known that Defendant Nassar posed a risk of harm to plaintiff and/or others in plaintiff's situation.

290.    The MSU defendants knew or should have known that defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

291.    As early as 1997 and/or 1998, the MSU defendants had direct and/or constructive knowledge of defendant Nassar's dangerous conduct and failed to respond reasonably and responsibly.

292.    The MSU defendants had a duty to warn or protect plaintiff and others in plaintiff's situation against the risk of injury by defendant Nassar.

293.    The special, trusting, confidential, and fiduciary relationship between the MSU defendants and defendant Nassar, as an employee, agent, and/or representative of the MSU defendants, created a duty for the MSU Defendants to disclose information regarding defendant

Nassar's sexual conduct.

294.    The MSU defendants breached the duty owed to plaintiff by failing to warn plaintiff and/or by failing to take reasonable steps to protect plaintiff from defendant Nassar.

295.    The MSU defendants breached the duties to protect owed to plaintiff by failing to:

    a.    Respond to allegations of sexual assault, abuse, and molestation;

    b.    Detect and/or uncover evidence of sexual assault, abuse, and molestation; and

    c.    Investigate, adjudicate, and terminate defendant Nassar's employment with defendant MSU prior to 2016.

296.    The MSU defendants violated plaintiff's rights by failing to adequately screen, counsel, and/or discipline defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in a violation of plaintiff's rights.

297.    The MSU defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect plaintiff from defendant Nassar's conduct.

298.    As a direct and proximate result of the MSU defendants' failure to warn or protect, plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

299.    In the alternative, the MSU defendants' failure to warn or protect was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to plaintiff and constitutes gross negligence that is the proximate cause of plaintiff's damages. Plaintiff has

suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depression, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earnings and earning capacity.

## COUNT FOURTEEN

## NEGLIGENT FAILURE TO TRAIN OR EDUCATE

### Against MSU Defendants

300.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

301.    The MSU defendants had a duty to take reasonable protective measures to protect plaintiff and others in plaintiffs' situation against the risk of injury by defendant Nassar, including the duty to train or educate plaintiff and other individuals in plaintiff's situation, about how to avoid a risk of sexual assault and/or sexual abuse by defendant Nassar.

302.    The MSU defendants breached the duty owed to plaintiff to take reasonable protective measures to protect plaintiff, and other patients of defendant Nassar, by failing to properly train or educate plaintiffs and other individuals in plaintiff's situation, about how to avoid a risk of sexual assault and/or sexual abuse by defendant Nassar.

303.    The MSU defendants had a duty to train and educate defendant Nassar in a reasonable manner in regards to defendant Nassar's treatment of females in his capacity as an employee, agent, and/or representative of the MSU defendants.

304.    The MSU defendants breached the duty owed to plaintiffs by failing to properly train or educate defendant Nassar in a reasonable manner in regards to defendant Nassar's treatment of females in his capacity as an employee, agent, and/or representative of the MSU defendants

305.    The MSU defendants failed to implement reasonable safeguards to:

a.    Prevent acts of sexual assault, abuse, and molestation by defendant Nassar; and

b.    Avoid placing defendant Nassar in positions where he would have unsupervised contact and interaction with plaintiffs and other young women.

306.    As a direct and proximate result of the MSU defendants' failure to train or educate, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

307.    In the alternative, the MSU defendants' failure to train or educate was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to plaintiff and constitutes gross negligence that is the proximate cause of plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and

will continue to be prevented from performing plaintiff's daily activities and obtaining the full

enjoyment of life, and has sustained and/or will sustain loss of earnings and earning capacity.

## COUNT FIFTEEN

## NEGLIGENT RETENTION

### Against MSU Defendants

308.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs.

309.    The MSU defendants owed a duty to plaintiff and others in plaintiffs' situation

when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and

supervising employees, agents, and/or representatives to exercise ordinary care.

310.    The MSU defendants breached the duties owed to plaintiff by failing to

adequately investigate, report, and address complaints about defendant Nassar's conduct, which

the MSU defendants knew or should have known.

311.    The MSU defendants breached the duties owed to plaintiff when the MSU

defendants retained defendant Nassar as an employee, agent, and/or representative after the MSU

defendants discovered or should have reasonably discovered defendant Nassar's conduct, which

reflected a propensity for sexual misconduct.

312.    The MSU defendants' failure to act in accordance with the standard of care

resulted in defendant Nassar gaining access to and sexually assaulting and/or sexually abusing

plaintiff and an unknown number of other individuals.

313.    The aforementioned conduct of the MSU defendants in credentialing, hiring,

retaining, screening, checking, regulating, monitoring, and supervising of defendant Nassar

created a foreseeable risk of harm to plaintiff and other minors and young adults.

314.    As a direct and proximate result of the MSU defendants' actions in retaining defendant Nassar, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

315.    In the alternative, the MSU defendants' actions in retaining defendant Nassar were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to plaintiff and constitutes gross negligence that is the proximate cause of plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earnings and earning capacity.

## COUNT SIXTEEN

### SEX DISCRIMINATION
### 42 U.S.C. § 18116, et seq (PATIENT PROTECTION AND AFFORDABLE CARE ACT § 1557

**Against Defendant MSU and Defendant MSU Board of Trustees**

316.    Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs.

317.    Section 1557 of the Patient Protection and Affordable Care Act, which is codified at 42 U.S.C. § 18116, provides that:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under . . . title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under title IX shall apply for purposes of violations of this subsection.

318.    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. prohibits sex discrimination in programs that receive federal financial assistance.

319.    Plaintiff has a right under 42 U.S.C. § 18116 to receive health care services free from discrimination on the basis of sex.

320.    Plaintiff is an "individual" within the meaning of 42 U.S.C. §18116.

321.    Defendant MSU receives federal financial assistance within the meaning of 42 U.S.C. § 18116 because it receives Federal Financial Assistance such as credits, subsidies, or contracts of insurance.

322.    Defendants MSU and MSU Trustees employed the services of defendant Nassar, doctors, and other professional and non-professional health care providers who cared for plaintiff and held themselves out to the public as competent, careful, and experienced in the care and treatment of patients.

323.    Plaintiff sought medical care from defendant Nassar at the MSU Sports Medicine Clinic for a myriad of injuries as identified in plaintiff's specific allegations above.

324.    Plaintiff expected to receive medical care for her injuries without being sexually assaulted and without fear of sexual harassment or assault.

325.    Defendant Nassar's conduct and actions toward plaintiff, that being nonconsensual digital vaginal penetration, touching of plaintiffs vaginal area, and other sexual touching as described herein this complaint constitutes sex discrimination under Title IX and 42 U.S.C. § 18116, and otherwise denied plaintiff the benefits of appropriate medical care.

326.    Defendants MSU and MSU Trustees, and defendants Strampel, Stollak, Kovan, Teachnor-Hauk, and Klages knew or should have known of Nassar's abuse yet failed to take corrective action.

327.    Defendant MSU and MSU Trustees are vicariously and/or contractually liable for the actions of its principles, employees, agents, and representatives.

328.    Defendants MSU, MSU Trustee, Strampel, Kovan, Stollak, and Klages supervised Nassar and/or were in a position to take appropriate action upon learning of concerns of misconduct as early as 1997.

329.    Defendants MSU, MSU Trustees, Strampel, Kovan, Stollak and Klages are directly liable for their failure to train, educate, and supervise.

330.    Defendants MSU, MSU Trustees, Strampel, Kovan, Stollak and Klages failed to properly train and supervise Nassar related to his treatment of plaintiff and with respect to promulgating and enforcing policies and procedure related to patient safety (*e.g.* use of gloves; consent; chaperones, etc.).

331.    Because of defendants inaction and deliberate indifference, defendants forced plaintiff to endure unnecessary pain, trauma, humiliation, and duress.

332.    Because of plaintiffs' sex, defendants treated plaintiff with a lack of care, dignity, and respect.

333.    The conduct of defendants MSU and MSU Trustees described above constitutes sex discrimination against plaintiff.

334.    Defendants MSU and MSU Trustees perpetrated this discrimination with malice, deliberate disregard for, or deliberate or reckless indifference to plaintiff's rights.

335.    The MSU defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received repeated notice of defendant Nassar's wrongdoing subjected plaintiff and countless others to further sexual harassment and sexual assaults as well as a sexually hostile environment-effectively denying them all access to any health program or activity at MSU and effectively denying them the benefits of appropriate medical care.

336.    As a direct and proximate result of the MSU defendants' actions and inactions, plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

337.    In the alternative, the actions or inaction of the MSU defendants was deliberately indifferent or so reckless as to demonstrate a substantial lack of concern for whether an injury would result to plaintiff and constitutes gross negligence that is the proximate cause of plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety,

depression, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing plaintiffs' daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earnings and earning capacity.

## COUNT SEVENTEEN

## CLAIMS AGAINST USA GYMNASTICS
## FRAUDULENT CONCEALMENT

338.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

339.    Plaintiff sought and received medical treatment from defendant USAG and was in a special relationship with defendant USAG due to its provision of medical treatment to its athletes through MSU and Nassar.

340.    Given the special relationship, defendant USAG had a duty to disclose and to warn and protect the athletes and patients who sought treatment at its sanctioned events and member gyms with its doctor.

341.    Plaintiff incorporates by reference the Fraud claims made below and hereby allege that defendant USAG committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of plaintiff's claims and that plaintiff had a cause of action against defendant Nassar and/or defendant USAG at the time his sexual assaults occurred by defendant Nassar making a material representation(s) to plaintiff and other plaintiffs involving a past or existing fact by:

      a.    Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;
      b.    Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.    Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d.    Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.    Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

    f.    Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate their ribs;" and,

    g.    Making a statement, explaining to plaintiff and another medical professional that the position of his hand was in an appropriate place-when it was not-and while he was digitally penetrating plaintiffs, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

342.    The material representation(s) to plaintiff by defendant Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and or closing of the eyes during the conduct.

343.    When defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatments" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

344.    Defendant USAG had knowledge of Nassar's criminal propensity of committing sexual abuse as early as 1998. This is confirmed by the following evidence:

    a.    Upon information and belief, in 1998, defendant USAG received a complaint about Larry Nassar's sexual abuse by a parent. The complaint was made directly to US Olympic Gymnastics Head Coach, John Geddert, a long-time agent of USAG.

    b.    During Nassar's preliminary examination on May 12, 2017 in the 55th District Court in Ingham County, Michigan, a young woman testified regarding an instance of sexual assault that occurred at Twistars' facility in Dimondale, Michigan in approximately 2010 when she was fifteen years old. She testified that, "*Mostly all I remember is [Nassar] doing the treatment on me with his fingers in my vagina, massaging my back with a towel over my butt, and John [Geddert] walking in and making a joke that I*

*guess my back really did hurt, and then I was uncomfortable because John [Geddert] was in there during that."*

    c.    Altogether, between 1999 and 2016, at least thirty-two (32) USAG gymnasts were sexually abused by Larry Nasser while participating in USAG-sanctioned events, at USAG's famed Karolyi Ranch, and at the USAG gymnastics club, Twistars. Upon information and belief, the living quarters and scheduling routines of these gymnasts were such that it was nearly impossible for USAG coaches, USAG trainers, and USAG agents to not know what Larry Nasser was doing.

345.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by plaintiff and previous victims in that plaintiff:

    1.    Should believe that the procedures were in fact "treatments;"

    2.    Should believe that the "treatments" were proper, appropriate, and legitimate;

    3.    Should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

    4.    Should continue the "treatment[s]" so that he could continue to sexually assault them;

    5.    Should not question and/or report the conduct to appropriate authorities; and,

    6.    Should not reasonably believe and not be aware of a possible cause of action that they have against defendant Nassar and/or defendant USAG.

346.    Plaintiff acted in reliance upon defendant Nassar's material representation(s),  in that plaintiff:

    1.    Reasonably believed that the "treatments" were in fact "treatments;"

    2.    Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

    3.    Reasonably did not believe that she had been sexually assaulted;

    4.    Believed that she should continue the "treatments;"

    5.    Did not believe that she should question and/or report the conduct to appropriate authorities; and did not reasonably believe that she had and was not aware of a possible cause of action that she had against defendant Nassar

and/or defendant USAG.

347.   Plaintiff thereby suffered injury, in that plaintiff:

    1.   Could not stop the sexual assault;

    2.   Continued to undergo the "treatment[s]" and sexual assault(s);and,

    3.   Plaintiff suffered discomfort, infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity, among other injuries more fully described below.

348.   Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to plaintiff and other victims involving a past or existing fact by:

    a.   Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.   Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.   Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d.   Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.   Making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

    f.   Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate their ribs;" and,

    g.   Making a statement, explaining to plaintiff and another medical professional that the position of his hand was in an appropriate place-when it was not-and while he was digitally penetrating plaintiff, all which were made

contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by defendant Nassar.

349.    Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

    a.   Positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

    b.   Dismissed a medical professional from the room, during an examination of a plaintiff while he was digitally penetrating plaintiff, who questioned the placement of his hands;

    c.   Prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of plaintiffs so that he could sexually assault plaintiffs;

    d.   Did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

    e.   Did not abide by or follow defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

    f.   Gave plaintiff at appointments, compliments, lengthy appointments, and befriending her parents in order to gain their trust.

350.    The actions and inactions of defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

351.    At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of defendant USAG and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant USAG.

352.    At all times material hereto, plaintiff was entirely free of any negligence

contributing to the injuries and damages hereinafter alleged.

### COUNT EIGHTEEN

### GROSS NEGLIGENCE

353.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

354.    A special, confidential, and fiduciary relationship was created between plaintiff and defendant Nassar when plaintiff sought medical treatment from defendant Nassar, acting in the course of his employment, agency, and/or representation of defendant USAG, and resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

355.    Plaintiff is or was a member of USAG and participated in USAG sanctioned events and training centers.

356.    Plaintiff was knowledgeable of USAG and considered it to be a prestigious organization. Plaintiff was referred to defendant Nassar through USAG affiliations.

357.    Defendant Nassar owed plaintiff a duty to use due care in providing medical treatment as an employee, agent, and/or representative of defendant USAG.

358.    Defendant USAG owed the public and plaintiff a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with its employees, representatives, and/or agents, including defendant Nassar.

359.    Defendant USAG knew or should have known of complaints pertaining to defendant Nassar's nonconsensual sexual touching and assaults that occurred under the guise of medical treatment.

360.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting plaintiff in the course of his employment, agency, and/or representation of defendant USAG

under the guise of proper medical treatment was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to plaintiff.

361.    Defendant USAG's failure to adequately supervise defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to plaintiff.

362.    Defendant USAG's conduct demonstrated a willful disregard for precautions to ensure plaintiff's safety.

363.    Defendant USAG's conduct demonstrated a willful disregard for substantial risks to plaintiff.

364.    Defendant USAG breached its duties owed to plaintiff and was grossly negligent when it conducted itself in the manner described above, including, but not limited to, failing to notify defendant MSU about the reasons for defendant Nassar's separation from defendant USAG in 2015 and, more broadly, the issues surrounding sexual abuse and warning signs and reporting requirements.

365.    These acts by defendant USAG were committed with reckless disregard to plaintiffs' safety, health, constitutional and/or statutory rights, and with substantial lack of concern to whether injury resulted to plaintiff.

366.    As a direct and proximate result of defendant USAG's and defendant Nassar's actions and/or inactions, plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

367.    In the alternative, the actions or inactions of defendant USAG and defendant Nassar were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to plaintiff and constitutes gross negligence that is the proximate cause of plaintiffs' damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing plaintiffs' daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earnings and earning capacity.

## COUNT NINETEEN

### NEGLIGENCE

**Against Defendant USAG and Defendant Nassar**

368.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

369.    A special, confidential, and fiduciary relationship was created between plaintiff and defendant Nassar when plaintiff sought medical treatment from defendant Nassar in the course of his employment, agency, and/or representation of defendant USAG, resulting in defendant Nassar owing plaintiff a duty to use ordinary care.

370.    Defendant Nassar owed plaintiff a duty to use ordinary care in providing medical treatment.

371.    Defendant USAG owed the public and plaintiff a duty to use ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting

with their employees, agents, and/or representatives, including defendant Nassar.

372.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting plaintiff in the course of his employment, agency, and/or representation of defendant USAG under the guise of proper medical treatment was a breach of the duty to use ordinary care.

373.   Defendant USAG's failure to adequately train and supervise defendant Nassar breached the duty of ordinary care.

374.   Defendant USAG's failure to properly investigate, address, and remedy complaints regarding defendant Nassar's conduct was a breach of the duty to use ordinary care.

375.   Defendant USAG's failure to inform the public, including individuals defendant USAG had referred to defendant Nassar for treatment, of the allegations leading to defendant Nassar's separation for defendant USAG was a breach of the duty to use ordinary care.

376.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting plaintiffs was a breach of the duty to use ordinary care.

377.   As a direct and proximate result of defendant USAG's and defendant Nassar's actions and/or inactions, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

## COUNT TWENTY
## VICARIOUS LIABILITY

### Against Defendant USAG

378.   Plaintiff realleges and incorporates by reference the allegations contained in the

previous paragraphs.

379.    Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

380.    Vicarious liability essentially creates agency between the principal and its agent so that the principal is held to have done what the agent has done.

381.    Defendant USAG's website contains sites portraying defendant Nassar as the recipient of distinguished awards and boasts him as having been "instrumental" to the success of USA gymnastics.

382.    Defendant USAG employed and/or held defendant Nassar out to be its employee, agent, and/or representative from approximately 1986 to 2015.

383.    A special, confidential, and fiduciary relationship was created and existed at all times pertinent hereto between the MSU defendants and defendant Nassar, as described herein this Complaint, resulting in the MSU defendants owing plaintiffs a duty to prevent them from defendant Nassar's sexual assault, battery, molestation, and discrimination.

384.    Defendant USAG is vicariously liable for the actions of defendant Nassar, as described above, that were performed during the course of his employment, agency, and/or representation with defendant USAG.

385.    Defendant USAG had actual and/or constructive knowledge of defendant Nassar sexually assaulting, battering, molesting, and harassing young females on several occasions under the guise of medical treatment and during the course of his employment, agency, and/or representation with defendant USAG, beginning in 1997 and/or 1998, including, but not limited to, the following knowledge:

a. Upon information and belief, in 1996, Defendant USAG received a complaint about defendant Nassar's sexual abuse by a parent of Jane A71 Doe. The complaint was made directly to US Olympic Gymnastics Head Coach, John Geddert, who was the head coach for the US World Gymnastics team, and who is a longtime agent of USAG.

b. Upon information and belief, the parent of Plaintiff Jane A71 Doe, also complained of Nassar's sexual abuse to other USAG coaches while plaintiff Jane A 71 Doe was engaged in gymnastics activities at the Twistars' facility, which is a USAG registered gymnastics club.

c. Upon information and belief, based on reports made by the Indianapolis Star, "at least seven women now say they raised concerns about Nassar starting in the late 1990 's."

d. During Nassar's preliminary examination on May 12, 2017 in the 55th District Court in Ingham County, Michigan, a young woman testified regarding an instance of sexual assault that occurred at Twistars' facility in Dimondale, Michigan in approximately 2010 when she was fifteen years old. She testified that, "Mostly all I remember is [Nassar} doing the treatment on me with his fingers in my vagina, massaging my back with a towel over my butt, and John [Geddert] walking in and making a joke that I guess my back really did hurt, and then I was uncomfortable because John [Geddert] was in there during that."

e. Altogether, between 1999 and 2016, at least thirty-two (32) USAG gymnasts were sexually abused by Larry Nasser while participating in USAG-sanctioned events, at USAG's famed Karolyi Ranch, and at the USA Gymnastics Club, Twistars. Upon information and belief, the living quarters and scheduling routines of these gymnasts were such that it was nearly impossible for USAG coaches, USAG trainers, and USAG agents to not know what Larry Nasser was doing.

386. Defendant USAG had actual and/or constructive knowledge of defendant Nassar's propensity for sexually assaulting, battering, molesting, and harassing his patients and other females under the guise of medical treatment and during the course of his employment, agency, and/or representation with defendant USAG, as described herein this Complaint, and took no action to prevent such conduct.

387. It was reasonably foreseeable that defendant Nassar would continue to sexually assault, batter, molest, and harass females under the guise of medical treatment and during the

course of his employment, agency, and/or representation with defendant USAG, with the actual and/or constructive knowledge defendant USAG had of such conduct.

388.    As a direct and proximate result of defendant USAG's actions and/or inactions, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

<u>COUNT TWENTY ONE</u>
<u>EXPRESS/IMPLIED AGENCY</u>

**Against Defendant USAG**

389.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

390.    An agent is a person who is authorized by another to act on its behalf.

391.    Defendant USAG intentionally and/or negligently made representations that Defendant Nassar was its employee, agent, and/or representative.

392.    On the basis of those representations, plaintiff reasonably believed that defendant Nassar was acting as an employee, agent, and/or representative of defendant USAG.

393.    Upon information and belief, defendant USAG referred significant numbers of gymnasts to defendant Nassar for medical treatment at his office on defendant MSU's campus.

394.    Plaintiff was injured as a result of defendant Nassar's sexual assault, abuse, and molestation, as described above. These acts were performed during the course of defendant Nassar's employment, agency, and/or representation with defendant USAG.

395.    Plaintiff was injured because she relied on defendant USAG to provide

employees, agents, and representatives who exercise reasonable skill and care.

396.    As a direct and proximate result of defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of defendant USAG, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

### COUNT TWENTY TWO
### NEGLIGENT SUPERVISION

#### Against Defendant USAG

397.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

398.    Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, defendant Nassar, while he was in the course of his employment, agency, and/or representation with defendant USAG and while he interacted with young female athletes and Plaintiff.

399.    Given the known sexual abuse in youth sports and gymnastics, it was reasonably foreseeable that defendant Nassar, who had prior allegations against him, would sexually abuse his patients, including plaintiff, unless properly supervised.

400.    Defendant USAG by and through its employees, agents, managers, and/or assigns knew or reasonably should have known of defendant Nassar's conduct and/or that defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in

children and young adults.

401.    Defendant USAG breached its duty to provide reasonable supervision of defendant Nassar, and permitted defendant Nassar, who was in a position of trust and authority, to sexually assault, abuse, molest, and harass plaintiff.

402.    The aforementioned sexual assault, abuse, molestation, and harassment occurred while defendant Nassar was in the course of his employment, agency, and/or representation with defendant USAG.

403.    Defendant USAG tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, resulting in the allowance of defendant Nassar to violate the rights of persons such as plaintiff with impunity.

404.    As a direct and proximate result of the defendant USAG's failure to adequately supervise, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

## COUNT TWENTY THREE

### NEGLIGENT FAILURE TO WARN OR PROTECT

**Against Defendant USAG**

405.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

406.    Given the direct or indirect knowledge of sexual abuse in youth sports, and in particular gymnastics, it was reasonably foreseeable that sexual abuse of young females may occur if proper procedures were not put in place by defendant USAG.

407.    Defendant USAG knew or should have known that defendant Nassar posed a risk of harm to plaintiff and/or others in plaintiffs' situation.

408.    Defendant USAG knew or should have known that defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

409.    Defendant USAG had actual and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

410.    Defendant USAG had a duty to warn or protect the public, plaintiff, and others in plaintiff's situation against the risk of injury by defendant Nassar.

411.    The special, trusting, confidential, and fiduciary relationship between defendant Nassar, in his capacity as an employee, agent, and/or representative of defendant USAG, and plaintiff created a duty to disclose this information.

412.    Defendant USAG breached the duty owed to plaintiff by failing to warn the public and plaintiff and/or by failing to take reasonable steps to protect the public and plaintiff from defendant Nassar.

413.    Defendant USAG breached its duties to protect plaintiff by failing to detect and/or uncover evidence of sexual assault, abuse, molestation, and harassment.

414.    Defendant USAG breached its duty to protect plaintiff by failing to investigate, adjudicate, suspend, and/or ban defendant Nassar from USAG affiliation.

415.    Defendant USAG failed to adequately screen, counsel and/or discipline defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the

duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of defendant USAG, resulting in violations of plaintiffs' rights.

416.    Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect plaintiff from defendant Nassar's conduct.

417.    As a direct and proximate result of the defendant USAG's failure to warn or protect, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

## COUNT TWENTY-FOUR

## NEGLIGENT FAILURE TO TRAIN OR EDUCATE

### Against Defendant USAG

418.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

419.    Defendant USAG had a duty to protect the public and plaintiff and others in plaintiff's situation against the risk of injury by defendant Nassar.

420.    Defendant USAG breached the duty owed to the public and plaintiff to take reasonable protective measures to protect plaintiff, and others in plaintiff's situation, by failing to properly train or educate plaintiff, and other individuals in plaintiff's situation, about how to avoid a risk of sexual assault and/or sexual abuse, including sexual assault and/or sexual abuse by defendant Nassar.

421.    Defendant USAG failed to implement reasonable safeguards to:

    a.    Prevent acts of sexual assault, abuse, and molestation by defendant Nassar; and

    b.    Avoid placing defendant Nassar in positions where he would have unsupervised contact and interaction with plaintiffs and other young athletes.

422.    As a direct and proximate result of the defendant USAG's failure to train or educate, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

**COUNT TWENTY-FIVE**

**NEGLIGENT RETENTION**

**Against Defendant USAG**

423.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

424.    Defendant USAG had a duty owed to plaintiff and others in plaintiff's situation when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents, and/or representative to exercise due care.

425.    Defendant USAG breached the duties owed to plaintiff by failing to adequately investigate, report, and address complaints about defendant Nassar's conduct, which defendant USAG knew or should have known.

426.    Defendant USAG breached the duties owed to plaintiff when defendant USAG

**Page 82 of 88**

retained defendant Nassar as an employee, agent, and/or representative after defendant USAG discovered or should have reasonably discovered defendant Nassar's conduct, which reflected a propensity for sexual misconduct.

427.    Defendant USAG's failure to act in accordance with the standard of care resulted in defendant Nassar gaining access to and sexually assaulting and/or sexually abusing plaintiff and an unknown number of other individuals.

428.    The aforementioned conduct of defendant USAG in credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising defendant Nassar created a foreseeable risk of harm to plaintiff and other minors and young adults.

429.    Defendant USAG's retention of defendant Nassar resulted in plaintiff relying on such credentials as they sought medical treatment.

430.    As a direct and proximate result of the defendant USAG's actions in retaining defendant Nassar, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

## COUNT TWENTY-SIX

## FRAUD AND MISREPRESENTATION

### Against Defendant USAG

431.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

432.    From approximately 1996 to summer 2015, defendant USAG represented to plaintiff and the public that defendant Nassar was a competent, safe, and highly regarded physician.

433.    By representing that defendant Nassar was a team physician and an athletic physician at defendant MSU and a National Team Physician with defendant USAG, defendant USAG represented to plaintiff and the public that defendant Nassar was safe, trustworthy, and of high moral and ethical repute and that plaintiff and the public need not worry about being harmed by defendant Nassar.

434.    The aforementioned representations were false when they were made because defendant Nassar had and was continuing to sexually assault, batter, molest, and harass unknown number of his patients and other individuals.

435.    Additionally, complaints were made to defendant USAG, yet defendant USAG did not contact plaintiff, the MSU defendants, other individuals it had referred to defendant Nassar, or any other clubs or organizations affiliated with defendant Nassar to inform them of the allegations and potential harm to plaintiffs and others.

436.    Defendant USAG continued to portray defendant Nassar as a competent and safe physician, intentionally inducing plaintiff and the public to rely on the reputation of defendant Nassar that defendant USAG was perpetuating.

437.    Plaintiff relied on the assertions of defendant USAG and sought medical treatment from defendant Nassar while defendant USAG knew of concerns and dangers.

438.    As a result of plaintiffs' and the public's reliance on defendant USAG's fraudulent misrepresentation regarding defendant Nassar, plaintiffs and others in plaintiffs' situation were sexually assaulted, abused, molested, and harassed by defendant Nassar.

439.    Plaintiff was subjected to sexual assault, abuse, molestation, and harassment as a result of defendant USAG's fraudulent misrepresentations regarding defendant Nassar.

440.    As a direct and proximate result of the defendant USAG's actions and knowingly false representations, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

**COUNT TWENTY-SEVEN**

**ASSAULT AND BATTERY**

**Against All Defendants**

441.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

442.    Defendants in a direct, agency or representative capacity intended to cause harmful or offensive contact with the plaintiff or an apprehension of such contact.

443.    Defendants in a direct, agency, and/or representative capacity achieved harmful or offensive contact with the plaintiff or an apprehension of such contact.

444.    Defendants proximately caused plaintiff to suffer physical, emotional and psychological damages.

## COUNT TWENTY-EIGHT

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### Against All Defendants

445.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

446.    Defendants engaged in extreme and outrageous conduct.

447.    Defendants acted with intent or extreme recklessness.

448.    Defendants proximately caused plaintiff to suffer physical, emotional and psychological damages.

## COUNT TWENTY-NINE

## CIVIL CONSPIRACY AND CONCERT OF ACTION

### Against All Defendants

449.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

450.    Defendants engaged in concerted action.

451.    Defendants proximately caused plaintiff to suffer physical, emotional and psychological damages.

## DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

452.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

453.    As a direct and/or proximate result of defendants' actions and/or inactions stated above, plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of

self-esteem, depression, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and/or will sustain loss of earning and loss of earning capacity.

454.    The conduct, actions and/or inactions of defendants as alleged in the above stated counts and causes of action constitute violations of plaintiff's constitutional and federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

455.    In whole or in part, as a result of some or all of the above actions and/or inactions of defendants, plaintiff has and continues to suffer irreparable harm as a result of the violations.

456.    The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

**WHEREFORE**, Plaintiff requests this Court and the finder of fact to enter a Judgment in Plaintiff's favor against all named defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seek against defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award plaintiff all applicable damages, including but not limited to compensatory, special, exemplary, and/or punitive damages, in whatever amount the plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)    Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of plaintiffs' constitutional, federal, and state rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)        Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)        Reasonable attorney fees, interest, and costs; and

d)        Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Respectfully submitted,

Dated:  August 17, 2018              /s/  Richard A. Cascarilla
                                     Richard A. Cascarilla (P32364)
                                     Attorneys for Plaintiff
                                     Murphy & Spagnuolo, P.C.
                                     2123 University Park Dr., Ste. 130
                                     Okemos, MI 48864
                                     (517) 351-2020
                                     rcascarilla@mbspclaw.com

Dated: August 17, 2018               /s/  Gary L. Bender
                                     Gary L. Bender (P31557)
                                     Attorneys for Plaintiff
                                     Murphy & Spagnuolo, P.C.
                                     2123 University Park Dr., Ste. 130
                                     Okemos, MI 48864
                                     (517) 351-2020
                                     gbender@mbspclaw.com

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

JOHN RA DOE and JANET RA DOE, AS NEXT
FRIENDS OF JANE R6 DOE, A MINOR;                    Case No.: 1:18-cv-922

               Plaintiff,                              Hon.

    v

MICHIGAN STATE  UNIVERSITY; THE BOARD OF
TRUSTEES OF MICHIGAN STATE  UNIVERSITY;
LAWRENCE GERARD NASSAR (individual  and
official capacity); USA GYMNASTICS, INC ; KATHIE
KLAGES; (individually and official capacity) WILLIAM
D. STRAMPEL, D.O. (individually and official capacity)
JEFFREY R. KOVAN; (individually and official capacity)
GARY STOLLAK; (individually and official capacity)
DESTINY TEACHNOR-HAUK; (individually and official
capacity)

               Defendants.

---

Richard A. Cascarilla (P32364)
Gary L. Bender (P31557)
Attorneys for Plaintiff
Murphy & Spagnuolo, P.C.
2123 University Park Dr., Ste. 130
Okemos, MI 48864
(517) 351-2020
rcascarilla@mbspclaw.com
gbender@mbspclaw.com

---

### **JURY DEMAND**

    Plaintiff, by and through her attorneys, Richard A. Cascarilla and Gary L. Bender of

MURPHY & SPAGNUOLO, P.C., hereby request a trial by jury.

Respectfully Submitted,

**MURPHY & SPAGNUOLO, P.C.**

Dated: August 17, 2018

 /s/  Richard A. Cascarilla
Richard A. Cascarilla (P32364)
Attorneys for Plaintiff
Murphy & Spagnuolo, P.C.
2123 University Park Dr., Ste. 130
Okemos, MI 48864
(517) 351-2020
rcascarilla@mbspclaw.com

Dated: August 17, 2018

 /s/  Gary L. Bender
Gary L. Bender (P31557)
Attorneys for Plaintiff
Murphy & Spagnuolo, P.C.
2123 University Park Dr., Ste. 130
Okemos, MI 48864
(517) 351-2020
gbender@mbspclaw.com